| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Lynda T. Bui, Trustee<br>3550 Vine Street, Suite 200B<br>Riverside, California 92507<br>Telephone: (949) 340-3400<br>Facsimile: (949) 340-3000<br>Email: trustee.bui@shulmanbastian.com | |
| ☐ *Movant(s) appearing without an attorney*<br>☐ *Attorney for Movant(s)* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

| In re:<br>ALMA RAMIREZ | CASE NO.: 6:25-bk-19250-RB<br><br>CHAPTER: 7 |
|---|---|
| | **DECLARATION THAT NO PARTY REQUESTED A HEARING ON MOTION**<br><br>**LBR 9013-1(o)(3)** |
| Debtor(s). | [No Hearing Required] |

1.  I am the ☒ Movant(s) or ☐ attorney for Movant(s) or ☐ employed by attorney for Movant(s).

2.  On (*date*): 04/21/2026   Movant(s) filed a motion or application (Motion) entitled: Chaoter 7 Trustee's Application for an Order Authorizing Employment of Saris Realty, Inc., dba Lawyers Realty Group as Real Estate Broker

3.  A copy of the Motion and notice of motion is attached to this declaration.

4.  On (*date*): 04/21/2026   Movant(s), served a copy of ☐ the notice of motion or ☐ the Motion and notice of motion on required parties using the method(s) identified on the Proof of Service of the notice of motion.

5.  Pursuant to LBR 9013-1(o), the notice of motion provides that the deadline to file and serve a written response and request for a hearing is 14 days after the date of service of the notice of motion, plus 3 additional days if served by mail, or pursuant to F.R.Civ.P. 5(b)(2)(D) or (F).

6.  More than 17 days have passed after Movant(s) served the notice of motion.

7.  I checked the docket for this bankruptcy case and/or adversary proceeding, and no response and request for hearing was timely filed.

8.  No response and request for hearing was timely served on Movant(s) via Notice of Electronic Filing, or at the street address, email address, or facsimile number specified in the notice of motion.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

9.  Based on the foregoing, and pursuant to LBR 9013-1(o), a hearing is not required.

Movant(s) requests that the court grant the motion and enter an order without a hearing.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Date: 05/12/2026         /s/ Lynda T. Bui_____
                         Signature


                         Lynda T. Bui_____
                         Printed name

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>Lynda T. Bui, Trustee<br>3550 Vine Street, Suite 200B<br>Riverside, California 92507<br>Telephone: (949) 340-3400<br>Facsimile: (949) 340-3000<br>Email: trustee.bui@shulmanbastian.com<br><br>Chapter 7 Trustee<br><br><br>☐ *Debtor(s) appearing without an attorney*<br>☐ *Attorney for:* | FOR COURT USE ONLY |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br>ALMA RAMIREZ,<br><br><br><br><br><br>Debtor(s). | CASE NO.: 6:25-bk-19250-RB<br>CHAPTER: 7<br><br>**NOTICE OF OPPORTUNITY TO REQUEST A HEARING ON MOTION**<br><br>**[LBR 9013-1(o)]**<br><br>[No hearing unless requested in writing] |

**TO THE U.S. TRUSTEE AND ALL PARTIES ENTITLED TO NOTICE, PLEASE TAKE NOTICE THAT:**

1.  Movant(s) Lynda T. Bui, Chapter 7 Trustee ,
    filed a motion or application (Motion) entitled Chapter 7 Trustee's Application for an Order Authorizing Employment of Saris Realty, Inc. dba Lawyers Realty Group as Real Estate Broker .

2.  Movant(s) is requesting that the court grant the Motion without a hearing as provided for in LBR 9013-1(o), unless a party in interest timely files and serves a written opposition to the Motion and requests a hearing.

3.  The Motion is based upon the legal and factual grounds set forth in the Motion. (*Check appropriate box below*):

    ☒ The full Motion is attached to this notice; or

    ☐ The full Motion was filed with the court as docket entry # _____, and a detailed description of the relief sought is attached to this notice.

4.  **DEADLINE FOR FILING AND SERVING OPPOSITION PAPERS AND REQUEST FOR A HEARING:** Pursuant to LBR 9013-1(o), any party who opposes the Motion may request a hearing on the Motion. The deadline to file and serve a written opposition and request for a hearing is 14 days after the date of service of this notice, plus 3 additional days if you were served by mail or pursuant to F.R.Civ.P. 5(b)(2)(D) or (F).

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

a.   If you timely file and serve a written opposition and request for a hearing, movant will file and serve a notice of hearing at least 14 days in advance of the hearing. [LBR 9013-1(o)(4)]

b.   If you fail to comply with this deadline:

(1)   Movant will file a declaration to indicate: (1) the Motion was properly served, (2) the response period elapsed, and (3) no party filed and served a written opposition and request for a hearing within 14 days after the date of service of the notice [LBR 9013-1(o)(3)];

(2)   Movant will lodge an order that the court may use to grant the Motion; and

(3)   The court may treat your failure as a waiver of your right to oppose the Motion and may grant the Motion without further hearing and notice. [LBR 9013-1(h)]

Respectfully submitted,

Date:  04/21/2026

/s/ Lynda T. Bui
Signature of Movant or attorney for Movant

Lynda T. Bui
Printed name of Movant or attorney for Movant

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

Lynda T. Bui, Trustee
3550 Vine Street, Suite 200B
Riverside, California 92507
Telephone:    (949) 340-3400
Facsimile:    (949) 340-3000
Email:          trustee.bui@shulmanbastian.com

Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| In re | Case No. 6:25-bk-19250-RB |
|---|---|
| **ALMA RAMIREZ** | Chapter  7 |
| Debtor. | **CHAPTER 7 TRUSTEE'S APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT OF SARIS REALTY, INC. DBA LAWYERS REALTY GROUP AS REAL ESTATE BROKER; DECLARATION OF JOHN HOLMES IN SUPPORT** |
| | [No Hearing Required Pursuant to Local Bankruptcy Rule 2014-1(b)] |

**TO THE HONORABLE MAGDALENA REYES BORDEAUX UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:**

Lynda T. Bui ("Trustee"), solely in her capacity as the chapter 7 trustee for the bankruptcy estate ("Estate") of **ALMA RAMIREZ** ("Debtor"), brings this Application for an Order Authorizing Employment of Saris Realty, Inc. dba Lawyers Realty Group ("Application") as the Trustee's real estate broker ("Broker"), to assist the Trustee in the

**Lynda T. Bui,
Chapter 7 Trustee**
3550 Vine Street
Suite 200**B**
Riverside, CA 92507

1

Employ Broker App TC RAMIREZ

listing, marketing and negotiating a sale of the Estate's interest in the Property identified below. In support of the Application, the Trustee respectfully represents as follows:

I.    **BACKGROUND INFORMATION**

**A.    Bankruptcy Case**

The Debtor commenced this bankruptcy case under Chapter 7 by filing a Voluntary Petition on December 26, 2025 ("Petition Date").  Lynda T. Bui is the duly appointed, qualified and acting Chapter 7 trustee for the Estate.

The initial 341(a) Meeting of Creditors for the Chapter 7 case was originally scheduled to be held on January 29, 2026 but said meeting was continued multiple times and ultimately set for April 15, 2026 [docket 8, 9, 10 and 11].  The last date to file claims in the case has not been set.  The Court's Claims Register for the case reflects no claims at this time.  The Debtor's Schedules filed on December 26, 2025 [docket 1] reflect secured claims totaling $452,603.00, priority claims of $0.00 and general unsecured claims of $61,589.00.

**B.    The Property**

Property of the Estate includes the Debtor's interest in the real property located at 12892 Claremore St., Victorville, CA 92392 ("Property").  On Schedules A/B and D filed on December 26, 2025 [docket 1], the Debtor (i) valued the Property at $486,000, (ii) listed a senior mortgage lien in favor of PennyMac Loan Servicer, LLC, in the amount of $421,046, and (iii) listed a lien in favor of Launch Servicing/sunpower in the amount of $31,557.

However, a search of title to the Property revealed the following additional secured liens: (i) a mortgage lien in favor of PennyMac Loan Servicer, LLC, in the amount of $43,514.04, (ii) a mortgage lien in favor of PennyMac Loan Servicer, LLC, in the amount of $17,123.19, (iii) a mortgage lien in favor of PennyMac Loan Servicer, LLC, in the amount of $22,726.95, and (iv) an Abstract of Judgment in favor of Financial Partners Credit Union $21,596.97.

The Debtor has claimed a *purported* exemption in the Property of $214,000.00. However, based upon Debtor's Schedules and the newly discovered liens, there is no equity

**Lynda T. Bui,
Chapter 7 Trustee**
3550 Vine Street
Suite 200**B**
Riverside, CA 92507

2

Employ Broker App TC RAMIREZ

in the Property.  Furthermore, the Trustee believes the value of the Property is lower than listed by Debtor on Schedule A/B.  The Broker has investigated the Property and recommends listing the Property for sale, in its "as is" condition, at $400,000.00.

The Trustee intends to negotiate an agreement with the secured lien holders which will provide for a reduced payoff amount on the liens (a "short sale") along with a carve out for the Estate.  If successful, the short sale will provide a meaningful distribution to holders of allowed unsecured claims in this case.  Based on this, the Trustee believes that employment of the Broker will be in the best interest of the Estate and its creditors.

Any sale of the Property by the Trustee will be conducted in accordance with Bankruptcy Code Section 363 and Federal Rule of Bankruptcy Procedure 6004 upon a noticed motion to be filed in the Debtor's bankruptcy case.

## II.    SERVICES TO BE PERFORMED

In order to market the Property for sale in the most effective manner and to liquidate the Property for the best and highest price in the current real estate market, the Trustee has solicited the assistance of the Broker, who is a California licensed real estate broker. Attached as **Exhibit 1** to the Declaration of John Holmes  (the "Holmes Declaration") is a copy of Mr. Holmes' resume.

The Broker is familiar with the sale of real property in the context of a bankruptcy case and will be able to provide knowledge that is unique to the sale of the Property and in negotiating a sale to address a potential complex bankruptcy sale.  The Trustee is informed that the Broker is experienced in real estate sales and marketing, including the areas in which the Property is located, and is well qualified in negotiating sales of real property similar to the Property in this case.  The employment of the Broker is anticipated to benefit the Estate providing marketing coverage as well as services that are unique to the sale of real property in the context of a bankruptcy case.

The Broker, on the Trustee's behalf, has examined the Property and has agreed to advertise the Property at its expense, to show the Property to interested parties, to represent the Estate as seller in connection with the sale of the Property, and to advise the Trustee

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 200**B**
Riverside, CA 92507

3

Employ Broker App TC RAMIREZ

with respect to obtaining the highest and best offers available for the Property in the present market.  A true and correct copy of the Residential Listing Agreement and its addenda is attached to the Holmes Declaration as **Exhibit 2**.  The Property will be listed for sale at $400,000.00.  Due to the current real estate market, the Trustee will have the discretion to adjust the listing price as necessary.

### A.    <u>Compensation Procedure</u>

In consideration for such services, subject to further application and Court order, the Broker will receive, upon consummation of any sale of the Property, a real estate agent's commission in an amount up to six percent (6%) of the purchase price.  The Broker has agreed to cooperate with outside brokers. In the event any broker or agent other than the Broker represents a purchaser of the Property (a "<u>Selling Broker</u>"), the commission will be split between the Broker and the Selling Broker (2%) in amounts to be determined.  If there is no cooperating broker, then the 2% will be paid to the Estate. In any event, the total commission will not exceed six percent (6%) of the total purchase price.

The Broker has been informed and understands that no sale of the Property may be consummated until after (1) notice to creditors with the opportunity for a hearing on the proposed sale, and (2) entry of a Court order approving the sale.

The Broker has been informed and understands that the Property is being sold on an "as is – where as" basis with all faults and conditions then existing at the Property, and thus understands that (1) the Trustee is not making any representations, warranties, either express or implied, as to the condition of the Property, uses (prior, present and future), or otherwise; (2) the Trustee shall not provide the buyer with any reports as to the use or condition of the Property; (3) the Trustee shall not provide the buyer with any warranty protection plan with any building permits or plans; and (4) the Trustee is selling the Property solely in her capacity as the Chapter 7 trustee of the Estate.

The Broker has agreed to be compensated subject to the provisions of Bankruptcy Code Section 328. The Broker is aware of the provisions of Bankruptcy Code Section 328(a) and has agreed, notwithstanding the terms and conditions of employment set forth in the

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 200**B**
Riverside, CA 92507

4

Employ Broker App TC RAMIREZ

Application, that the Court may allow different compensation if the terms and conditions in the Application prove to have been improvident in light of developments unanticipated at the time of the fixing of such terms and conditions.

**B.      The Broker is "Disinterested"**

To the best of the Trustee's knowledge after full investigation, and as set forth in the Holmes Declaration, the Broker and its employees and agents: (a) do not hold or represent any interest adverse to the Trustee, the Debtor, creditors of Estate; (b) have no connections with the Debtor, the Debtor's creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, any person employed in the office of the United States Trustee, or any bankruptcy judge presiding in the United States Bankruptcy Court for the Central District of California; and (c) is a disinterested person as that term is defined in Bankruptcy Code Section 101 (14) and used in Bankruptcy Code Section 327(a).

The Trustee is informed and believes and on that basis alleges that employment of the Broker on the terms and conditions provided for herein is in the best interest of the Estate.

**WHEREFORE**, the Trustee requests that she be authorized to employ the Broker as her real estate broker on the terms and conditions set forth in the Application, and that the Trustee be authorized to execute the Residential Listing Agreement and its addenda attached as **Exhibit 2** to the Holmes Declaration, and for such other and further relief as is just.

Dated: April 20, 2026          _/s/ Lynda T. Bui_

Lynda T. Bui
Chapter 7 trustee for the bankruptcy estate of **ALMA RAMIREZ** Case No. 6:25-bk-19250-RB

**Lynda T. Bui,
Chapter 7 Trustee**
3550 Vine Street
Suite 200**B**
Riverside, CA 92507

5

Employ Broker App TC RAMIREZ

# DECLARATION OF JOHN HOLMES

I, John Holmes, declare and state as follows:

1.      I am over the age of 18 years old and am legally able to testify to the following in a court of law if required to do so.  I have personal knowledge of the facts and circumstances set forth herein.  If called upon as a witness, I could and would competently testify under oath with respect thereto.

2.      I have been a licensed Real Estate Salesperson since 1987, holding California Department of Real Estate license number 00957800. I have been a licensed salesperson with Saris Realty, Inc. dba Lawyers Realty Group ("Broker") since 2014. I am familiar with the standards and practices of my industry regarding the listing, marketing and sale of residential homes throughout California. The Broker is located at 7700 Irvine Boulevard, Suite 800, Irvine, California 92618; telephone 714-813-7250; email agent@lawyersrealtygroup.com.  I make this declaration in support of the Application for an Order Authorizing Employment of Saris Realty, Inc. dba Lawyers Realty Group as Real Estate Broker ("Application") filed by Lynda T. Bui, the Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of **ALMA RAMIREZ** ("Debtor").

3.      I have read the Application and am familiar with the real property located at **12892 Claremore St., Victorville, CA 92392** ("Property"). I believe that I am qualified to represent the Trustee and the Estate in connection with the marketing of the Property and negotiating with potential buyers for a sale of the Property.  Attached here as **Exhibit 1** is a description of my qualifications.

4.      The Broker has agreed to accept employment on the terms and conditions set forth in the Application and as set forth in the *Residential Listing Agreement* and the attached addenda, a copy of which is attached here as **Exhibit 2** and incorporated here by this reference.

5.      The Broker and I have been informed and understand that no sale of the Property may be consummated until after (i) notice to creditors with the opportunity for a hearing on the proposed sale, and (ii) entry of a Court order approving the sale.

**Lynda T. Bui,
Chapter 7 Trustee**
3550 Vine Street
Suite 200**B**
Riverside, CA 92507

6

Employ Broker App TC RAMIREZ

6.      The Broker and I have been informed and understand that the Property is being sold on an "as is – where as" basis with all faults and conditions then existing at the Property, and thus understand that:  (i) the Trustee is not making any representations, warranties, either express or implied, as to the condition of the Property, uses (prior, present and future), or otherwise; (ii) the Trustee shall not provide the buyer with any reports as to the use or condition of the Property; (iii) the Trustee shall not provide the buyer with any warranty protection plan with any building permits or plans; and (iv) the Trustee is selling the Property solely in her capacity as the Chapter 7 trustee of the Estate.

7.      The Broker and I have agreed and understand that notwithstanding the terms and conditions of employment set forth in the Application, that the Court may allow different compensation if such terms and conditions set forth in the Application prove to have been improvident in light of development unanticipated at the time of the fixing of such terms and conditions.

8.      The Broker and I have no pre-petition claim against the Estate.

9.      The Broker and I received no retainer for the services to be performed in this case.

10.      To the best of my knowledge after full investigation, Saris Realty and its principals, employees, agents and I:

a.      do not hold or represent any interest adverse to the Trustee, the Debtor, the Debtor's creditors, and the Estate;

b.      have no connections with the Debtor, the Debtor's creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, any person employed in the office of the United States Trustee, or any bankruptcy judge presiding in the United States Bankruptcy Court for the Central District of California;

c.      are "disinterested" as that term is defined in Bankruptcy Code Section 101 (14) and used in Bankruptcy Code Section 327(a) because Saris Realty and I:

i.      are not a creditor or an insider;

///

**Lynda T. Bui,**
**Chapter 7 Trustee**
3550 Vine Street
Suite 200**B**
Riverside, CA 92507

7

Employ Broker App TC RAMIREZ

ii.     are not and was not an investment banker for any outstanding security of the Debtor;

iii.    have not been, within three years before the date of the filing of the Debtor's petition, an investment banker for the security of the Debtor or an attorney for such an investment banker in connection with the offer, sale or issuance of a security of the Debtor;

iv.    have not and were not, within two years before the date of the filing of the petition, a director, officer or employee of the Debtor or of an investment banker specified in subparagraphs (b) or (c) of this paragraph; and

v.     do not have an interest materially adverse to the interest of the Estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor as an investment banker as specified in subparagraphs (b) or (c) of this paragraph, or for any other reason.

11.    The Broker and I shall not engage in dual representations or undertake representation of any interest adverse to the Estate under Bankruptcy Code section 327(a).

12.    Under the terms of the proposed listing agreement, a real estate commission shall be paid upon closing of a court-approved sale of the Property.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 20th 2026, at Irvine, California.

_John Holmes_ (signature)

John Holmes

Lynda T. Bui,
Chapter 7 Trustee
3550 Vine Street
Suite 200B
Riverside, CA 92507

8

Employ Broker App TC RAMIREZ

**Exhibit 1**

**Broker Resume**

John Holmes, Realtor

DRE Lic# 00957800

Lawyers Realty Group

7700 Irvine Center Dr., Ste 800, Irvine, CA 92618

714-813-7250 / agent@lawyersrealtygroup.com

## Experience:

With 39-years of experience in the real estate industry as a licensed salesperson, I am a highly accomplished Realtor and real estate office manager skilled in the marketing and sale of residential homes, investment properties and bank-owned properties.

My deep understanding of market trends, strategic pricing, and effective negotiation tactics has consistently led to successful transactions and satisfied clients. In addition to my proficiency in traditional real estate sales, I have cultivated specialized expertise in handling complex transactions involving mortgage defaults, probate sales, and bankruptcy proceedings. These situations require not only technical skill and industry insight but also a high level of patience, discretion, and problem-solving ability. By navigating these intricate processes with professionalism and diligence, I have established a reputation as a trusted advisor for clients, attorneys, and financial institutions alike.

My leadership as a real estate office manager has further honed my organizational and operational skills, allowing me to oversee daily office functions, mentor agents, and streamline workflow to maximize efficiency. I am committed to providing exceptional service and fostering a client-centered approach in every aspect of my work.

## Work History:

**Saris Realty Inc., dba Lawyers Realty Group, Irvine CA**
**Realtor/Office Manager**
**July 2014 to present**

*Realtor, lead agent and office manager, specializing in a variety of real estate transactions, including short sales, traditional sales, complex default transactions, probate sales, and bank-owned (REO) properties.*

**America's Realty Group, Downey, CA**
**Realtor/Office Manager**
**August 2011 – July 2014**

*As the operations manager, I oversaw the daily listing and sales activities of America's Realty Group, a high-volume real estate brokerage focused on marketing and selling FNMA bank-owned properties.*

**Constellation Investments, La Habra, CA**
**Professional Trader**
**February 2009 – August 2011**

*Day traded NASDAQ, NYSE listed equities, ETF's, and stock futures.*

**Citi Residential Lending, Orange, CA**
**Assistant Asset Manager**
**July 2007 – February 2009**

*As an Assistant Asset Manager, I supported two Asset Managers in a large, high-volume REO (real estate owned) department that oversaw a national portfolio of approximately 17,000 foreclosed properties. I personally handled approximately 400 properties, interacting daily with agents, appraisers, escrow officers, closing companies, rehab teams, and title companies to ensure a smooth transition from REO to closing. My responsibilities included reviewing Broker Price Opinions, HUD documents, title prelims, and appraisals, as well as working closely with title companies to resolve any outstanding title issues within the portfolio.*

**AMC Mortgage Services, Orange, CA**
**Assistant Asset Manager**
**January 2001 – July 2007**

*As an Assistant Asset Manager in the REO (Real Estate Owned) department at AMC Mortgage Services, a major mortgage and servicing firm, I interfaced daily with Asset Managers and real estate agents across the country. My responsibilities included assigning new properties to local Realtor's, reviewing broker price opinions (BPOs), appraisals, title reports, and supervising the listing files.*

**Century-21 Discovery, Fullerton, CA**
**Realtor/REO Specialist**
**April 1995 – January 2001**

*As a real estate agent, I worked directly with banks, providing BPO (Broker Price Opinion) services to their REO (Real Estate Owned) and loss mitigation departments. This allowed me to establish market values for the banks' assets. I also served as the REO listing agent, responsible for marketing and negotiating the sales of bank-owned properties. Additionally, I worked on short sales with borrowers in default, handling the marketing of REO properties from acquisition through the closing of the sale. Concurrently, I also served as the Executive Assistant to one of the top-producing agents at the company's main office.*

**Coldwell Bank Residential Real Estate, Yorba Linda, CA**
**Realtor/Sales Associate/REO Specialist**
**April 1987 – April 1995**

*As a real estate professional, I directly liaised with banks to prepare their foreclosed properties for resale. This involved completing broker price opinions (BPOs), interacting with the public, and listing the bank-owned properties on the market after the foreclosure process was complete.*

**Exhibit 2**

**Listing Agreement and Addendum**

Docusign Envelope ID: CEEE8015-A486-4D2C-8571-38CAAA2D9EC

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# RESIDENTIAL LISTING AGREEMENT
## (Exclusive Authorization and Right to Sell)
### (C.A.R. Form RLA, Revised 12/25)

**Date Prepared:** *April 13, 2026*

1. **EXCLUSIVE RIGHT TO SELL:**  *Lynda T. Bui, ATF for the Bankruptcy Estate of In re Alma Ramirez*  ("Seller")
hereby employs and grants  *Lawyers Realty Group*  ("Broker")
the exclusive and irrevocable right to sell or exchange the real property described as  *12892 Claremore St.*
situated in  *Victorville*  (City),  *San Bernardino*  (County), California,  *92392*  (Zip Code),
Assessor's Parcel No.  *3096-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*  ("Property") for the Listing Period specified in **paragraph 2A(1)**.

2. **TERMS OF LISTING AGREEMENT:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 7 pages. Seller is advised to read all 7 pages.

| | Para # | Paragraph Title or Contract Term | Terms and Conditions | |
|---|---|---|---|---|
| **A** | | **Representation** | | |
| **A(1)** | 4G | **Listing Period** **(Maximum Length)** | Beginning  *04/13/2026*  (date) Ending at 11:59 P.M. on  *04/13/2027*  (date) | |
| | | | (Not to exceed 24 months if improved with one to four units and not owned by an entity. If Listing Period exceeds 24 months on a residential 1-4, this Agreement is void, unless Seller is a corporation, LLC, or partnership.) | |
| **A(2)** | | **Listing Price** | *Four Hundred Thousand*  Dollars ($*400,000.00* ) | |
| **B** | | **Property Specific Listings** | ☐ Manufactured (mobile) home (C.A.R. Form MHLA attached) | |
| | | | ☐ Probate, conservatorship, or guardianship (C.A.R. Form PLA attached) | |
| **C** | | **Compensation: NOTICE: The amount or rate of real estate commissions is not fixed by law. They are set by each broker individually and may be negotiable between Seller and Broker.** See attached Broker Compensation Advisory (C.A.R. Form BCA). | | |
| **C(1)** | 4B | **Compensation to Seller's Broker (only Seller's side of transaction)** | ____ % of the listing price AND, if any, _____ ; OR ☐ $ _____ ; OR ☒ see attached Broker-created compensation schedule. (% above is based on purchase price if Seller and buyer sign a purchase agreement) | |
| **C(2)** | 4C | ☒ **Additional Compensation to Seller's Broker if buyer is unrepresented** **(Does NOT apply to dual agency)** | ____ % of the purchase price AND, if any, _____ ; OR ☐ $ _____ ; OR ☒ see attached Broker-created compensation schedule. (If Broker represents both buyer and Seller, buyer side compensation shall be specified in a separate written agreement between Broker and buyer.) | |
| **C(3)** | 4D(2) | **Continuation of Right to Compensation for Broker Identified Prospective Buyers** | The Continuation Period shall be  *180*  calendar days after the Listing Period or any extension ("Continuation Period"). | |
| **C(4)** | 4F | **Seller Obligation to Pay Previous Brokers** | Previous Listing/Other broker(s): _____ Compensation to above broker(s) owed if Property transferred to: _____ | |
| **C(5)** | | ☐ Broker is paying a referral fee related to the representation of Seller. See attached C.A.R. Form RAD. | | |
| **D** | | **Items Intended to be Included and Excluded** | | |
| **D(1)** | 5A | **Items Included** | ☐ _____ ; | ☐ _____ ; |
| **D(2)** | 5A | **Excluded Items** | ☐ _____ ; | ☐ _____ ; |
| **D(3)** | 5B | **Leased Items:** | ☐ Solar Power System(s); | ☐ Alarm System(s); |
| | | | ☐ Propane Tank(s); ☐ Water Softener; | ☐ |
| **D(4)** | 5B | **Liened Items:** | ☐ Solar Power System(s); | ☐ Windows or Doors; |
| | | | ☐ Heating/Ventilation/Air conditioning  ☐ ; | ☐ |
| **D(5)** | 5C | (a)  **Smart Home Features Seller prefers to Include:** _____ | | |
| | | (b)  **Smart Home Features Seller prefers to Exclude:** _____ | | |
| **E** | | **MLS and Public Marketing** | | |
| **E(1)** | | **Property will be marketed in the following MLS** | Primary *CRMLS* _____ Other(s): _____ | See C.A.R. Form MLSA. |
| **E(2)** | 10 | **Publication of Seller willingness to consider concessions** | If checked below: **(i)** Seller authorizes Broker to market that Seller is willing to consider offers asking for concessions; and **(ii)** no amount of the possible concession will be stated in such marketing unless Seller notifies Broker in writing of the amount. ☐ In the MLS(s) listed above, if permitted by that MLS. ☐ In any other marketing outside of the MLS | |
| **E(3)** | 12A | ☐ Seller instructs Broker not to take or use photographs in marketing, except as required by MLS rules. | | |

© 2025, California Association of REALTORS®, Inc.
**RLA REVISED 12/25 (PAGE 1 OF 7)**

Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 7)**

Docusign Envelope ID: CEEE8015-A486-4D2C-8571-382A1A92B9EC

Property Address: **12892 Claremore St., Victorville, CA 92392**                Date: **April 13, 2026**

| F | | Broker's and Seller's Duties | | |
|---|---|---|---|---|
| F(1) | 7B | Timing of Presentation of Offers | Seller instructs Broker to present all offers received as soon as practicable OR ☐ Offers shall be presented on _____ (date) or ☐ _____ days after the Property is listed as active on the MLS. | |
| F(2) | 7C | Buyer Supplemental Offer Letters (Buyer Letters) | Seller instructs Broker not to present Buyer Letters, OR ☐ Seller instructs Broker to present Buyer Letters. If Seller requests or relies on Buyer Letters, Seller is acting against Broker's advice. | |
| F(3) | 7E | Investigation Reports | ☒ Natural Hazard Disclosure ☐ Structural Pest Control, ☐ General Property Inspection, ☐ Homeowners Association Documents, ☐ Preliminary (Title) Report, ☐ Roof Inspection, ☐ Pool Inspection, ☐ Septic/Sewer Inspection, ☒ Other: **Broker to Order NHD Report** | Seller shall order and pay for any reports selected within **5 (or _____) days** of the Beginning Date of this Agreement |
| G | 21 | Exceptions to Ownership/Title | _____ | |
| H | | ☐ Seller intends to include a contingency to purchase a replacement property as part of any transaction (see C.A.R. Form SPRP). | | |
| I | | Intentionally Left Blank | | |
| J | 13, 14 | Seller Opt Outs | ☐ Keysafe/Lockbox ☐ Signs | |
| K | | Additional Terms | _____ | |

3. **ADVISORIES AND ADDENDA:**
   A. **Advisories**
   ☒ Broker Compensation Advisory (C.A.R. Form BCA)
   ☐ REO Advisory Listing (C.A.R. Form REOL)
   ☐ Trust Advisory (C.A.R. Form TA)
   ☐ Other: _____
   B. **Addenda.** The addenda identified below are incorporated into this Agreement
   ☒ Short Sale Listing Addendum (C.A.R. Form SSLA)
   ☒ **Addendum to Listing Agreement**          ☒ **Compensation Schedule**
4. **COMPENSATION TO BROKER:**

   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker.**

   A. **ADVISORY:** Real estate commissions include all compensation and fees to Broker and are fully negotiable.
   B. **COMPENSATION TO BROKER:** Seller agrees to pay to Broker as compensation for services under this Agreement, the amount specified in **paragraph 2C(1)**.
   C. **OPTIONAL ADDITIONAL COMPENSATION FOR UNREPRESENTED BUYER:** Seller agrees to pay Broker the additional amount specified in **paragraph 2C(2)**, if checked, for services rendered only if the buyer is not represented by a real estate agent. If a buyer is represented by a real estate agent, whether working through Broker or another brokerage company, then **paragraph 2C(2)** does not apply.
   D. **COMPENSATION TERMS:** Compensation is earned, and Seller shall pay Broker as follows:
      (1) **Completed Transaction or Seller Default:** If during the Listing Period, or any extension, Broker, any other broker, Seller, or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      OR (2) **Continuation of Right to Compensation for Broker Procured Buyer(s):** If, during the Continuation Period specified in **paragraph 2C(3)**, or the same period of time after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease, or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity:
      • who physically entered and was shown the Property during the Listing Period or any extension by Broker or any other broker; or
      • for whom Broker or any other broker submitted to Seller a signed, written offer to acquire, lease exchange or obtain an option on the Property.
      Broker's right to compensation pursuant to this paragraph shall only apply if, prior to expiration of this Agreement or any extension, Broker delivers to Seller a written notice of the names of such Prospective Buyers (C.A.R. Form NPB).
      OR (3) **Seller Interference with Listing:** If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.

RLA REVISED 12/25 (PAGE 2 OF 7)                Seller's Initials _____ / _____

Docusign Envelope ID: CEEE8015-A486-4D2C-8571-38...

Property Address: *12892 Claremore St., Victorville, CA 92392* _____ Date: **April 13, 2026**

**E.   ADDITIONAL COMPENSATION TERMS:**

(1)   **Buyer Breach and Seller Recovery of Damages:** If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under **paragraph 4** shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection and suit, if any.

(2)   **Escrow Instructions:** Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to **paragraph 4**, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.

**F.   SELLER COMPENSATION OBLIGATIONS TO OTHER BROKERS:**

(1)   Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified in **paragraph 2C(4)**.

(2)   Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the individuals or entities specified in **paragraph 2C(4)**.

(3)   If the Property is sold to anyone specified in **paragraph 2C(4)** during the time Seller is obligated to compensate another broker: **(i)** Broker is not entitled to compensation under this Agreement; and **(ii)** Broker is not obligated to represent Seller in such transaction.

**G.   MAXIMUM LISTING PERIOD: The maximum listing period allowed by law for residential property improved with one to four units is 24 months from the date this Agreement is made. This restriction does not apply if Seller is a corporation, LLC or partnership. It is unlawful to record or file this listing Agreement, or a memorandum or notice thereof, with the county recorder.**

5.   **A.   ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
Seller intends that the items specified in **paragraph 2D** be included or excluded in offering the Property for sale, but understands that: **(i)** the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the transaction; and **(ii)** Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B.   LEASED OR NOT OWNED ITEMS; LIENED ITEMS:** The items specified in **paragraph 2D(3)** are leased or not owned by Seller and the items specified in **paragraph 2D(4)** have been financed and a lien has been placed on the Property to secure payment. Seller will provide to the buyer, as part of the purchase agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**C.   SMART HOME FEATURES:** The smart home features are intended to be included or excluded as specified in **paragraph 2D(5)**.

6.   **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: **(i)** any Notice of Default recorded against the Property; **(ii)** any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; **(iii)** any bankruptcy, insolvency or similar proceeding affecting the Property; **(iv)** any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and **(v)** any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

7.   **BROKER'S AND SELLER'S DUTIES:**

**A.   BROKER RESPONSIBILITY, AUTHORITY AND LIMITATIONS:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to **(i)** order reports and disclosures including those specified in **paragraph 7E** as necessary, **(ii)** advertise and market the Property by any method and in any medium selected by Broker, including MLS and the internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and **(iii)** disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

**B.   PRESENTATION OF OFFERS:**

(1)   **Strategies Affecting Delayed Offers and Buyer Broker Compensation:** There are different strategies for obtaining the best offer for Seller. Seller is advised that certain buyers may prefer not to be in a competitive situation and either may not make an offer if there is an instruction that all offers will be presented at a later specified time or may try to make a "preemptive" offer that will expire shortly, hoping that Seller will accept before the presentation date. Additionally, certain buyers may not be able or allowed to pay compensation to a buyer's broker. These buyers may request for seller to pay buyer's broker through a term in the purchase agreement or through a separate compensation agreement. Seller is advised to discuss and consider the best strategy for Seller related to the presentation of offers.

(2)   (A)   **Seller Instructs Broker to Present Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.

OR (B)   **Seller Instructs Broker not to Present Offers until a Later Time:** If checked in **paragraph 2F(1)**, Seller has elected to have Broker hold all offers and present them to Seller as specified in **paragraph 2F(1)**. Broker will inform Seller that an offer has come in, but will not submit the offer to Seller, unless specifically instructed otherwise, in writing. Local MLS rules may impact this practice and whether it will provide any benefit to Seller. Broker and Seller may amend this instruction by agreeing in writing.

RLA REVISED 12/25 (PAGE 3 OF 7)                    Seller's Initials  / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 7)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          Lynda Bui File -

Docusign Envelope ID: CEEE8015-A486-4D2C-8571-3824AA0259FC

Property Address: *12892 Claremore St., Victorville, CA 92392*                                  Date: *April 13, 2026*

**C.   BUYER SUPPLEMENTAL OFFER LETTERS (BUYER LETTERS):**

(1)  **Advisory Regarding Buyer Letters:** Seller is advised of the practice of many buyers and their agents to include a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters. See C.A.R. Form FHDA for further information.

(2)  (A)  **Seller Instructs Broker not to Present Buyer Letters** whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.

OR  (B)  **Seller Instructs Broker to Present Buyer Letters:** If checked in **paragraph 2F(2)**, Broker advises seller that: **(i)** Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and **(ii)** if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.

**D.   SELLER GOOD FAITH:** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to **paragraph 2C(4)**, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

**E.   INVESTIGATIONS AND REPORTS:** Seller agrees, within the time specified in **paragraph 2F(3)**, to order and, when required by the service provider, pay for all reports specified in **paragraph 2F(3)**. If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

**F.   UNDISCLOSED CONDITIONS; INCOMPLETE OR INCORRECT INFORMATION:** Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.

**8.   DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

**9.   AGENCY RELATIONSHIP:**

**A.   DISCLOSURE:** Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationship" (C.A.R. Form AD).

**B.   SELLER REPRESENTATION:** Broker shall represent Seller in any resulting transaction, except as specified in **paragraph 4F(3)**.

**C.   POSSIBLE DUAL AGENCY:**

(1)  **Disclosure and Consent in a Transaction:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties. Compensation is not necessarily determinative of agency.

(2)  **Showing Properties:** Seller acknowledges that real estate brokers must have a written agreement in order to work with a buyer before showing properties to that buyer and that some buyers working through Broker may consider or make an offer on Seller's property. Seller consents to Broker entering into a representation agreement with a buyer, and if that buyer makes an offer on Seller's property, Broker will become a dual agent representing both that buyer and Seller.

(3)  **Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller – Disclosure and Consent" (C.A.R. Form PRBS).

**D.   UNREPRESENTED BUYERS:** If a buyer is interested in viewing Seller's Property is not already represented by a real estate broker, and such buyer refuses to be represented by Broker, Seller authorizes Broker to obtain a signed document from such buyer refusing representation by Broker. Broker shall provide such buyers, at the earliest practicable time, a disclosure of non-representation, such as Buyer Non-Agency (CAR Form BNA) or Open House and Visitor Non-Agency Disclosure and Sign-In (C.A.R. Form OHNA-SI).

**E.   CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

**RLA REVISED 12/25 (PAGE 4 OF 7)**                          Seller's Initials  _____ / _____

Docusign Envelope ID: CEEE8015-A486-4D2C-8571-38CA4A9259EC

Property Address: *12892 Claremore St., Victorville, CA 92392* _____ Date: *April 13, 2026*

**F. TERMINATION OF AGENCY RELATIONSHIP:** Seller acknowledges and agrees that the representation duties of, and agency relationship with, Broker terminate at the expiration of this Agreement or, if it occurs first, the completion of any transaction specified in this Agreement.

**10. SELLER CONCESSIONS:**

- Concessions are monetary payments that a seller agrees to contribute towards a buyer's expenses and other costs a buyer is responsible for in the transaction.
- Concessions may include, but are not limited to, costs of escrow or title, lender fees, repairs, inspections, and buyer broker compensation.
- Concessions specified in the MLS must be allowed to be used for any permissible buyer expense or cost and must not specify the concessions are to be used for broker compensation. However, a term in the buyer's offer may specify that the Seller agrees to pay compensation to a buyer's broker. Should Seller agree to do so, Broker does not represent, nor will Broker confirm, that the amount specified is owed by buyer to buyer's broker pursuant to a written agreement that covers Seller's property. In the absence of a separate agreement, Seller's contractual obligation to pay buyer's broker is independent of any obligation between buyer and buyer's broker.
- Concessions identified in an MLS listing are not promises to pay but instead indicate to a buyer that the seller will consider offers asking for concessions. Concessions specified in the MLS are not intended to be binding on Seller unless included in the accepted purchase agreement.

**11. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or injury to person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: **(i)** to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and **(ii)** to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post a notice disclosing the existence of security devices.

**12. PHOTOGRAPHS AND INTERNET ADVERTISING:**

**A. OWNERSHIP AND USE OF IMAGES:** In order to effectively market the Property for sale, it is often necessary to provide photographs, virtual tours and other media to buyers. Unless checked in **paragraph 2E(3)**, Seller agrees that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the internet, neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post transaction, and for Broker/Agent's business in the future.

**B. THIRD-PARTY USE AND TAKING OF IMAGES:** Seller acknowledges that prospective buyers and/or other persons coming onto the Property may take photographs, videos, or other images of the Property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. Once Images are taken and/or put into electronic display on the internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**C. DIGITALLY ALTERED IMAGES:** If Broker uses a digitally altered image ("DAI") in an advertisement or other promotional material to market the Property, Broker must comply with Business & Professions Code § 10140.8 as follows: **(i)** by including a reasonably conspicuous statement located on or adjacent to the DAI stating that the image is altered and also clearly identifying that the original, unaltered image can be accessed via a link to a publicly-accessible internet website, URL, or QR code; and **(ii)** if the DAI is posted on an internet website controlled by Broker or Broker's agent, Broker may satisfy Broker's legal obligation by either complying with **paragraph 12C(i)** above or by including the unaltered version along with the DAI posting. For details on what qualifies as DAI — and for examples of image enhancements that are not considered DAI — see Business & Professions Code § 10140.8.

**13. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.

**A.** Unless checked in **paragraph 2J**, Seller authorizes Broker to install a keysafe/lockbox.

**B. TENANT-OCCUPIED PROPERTY:** If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

RLA REVISED 12/25 (PAGE 5 OF 7)

Seller's Initials  / _____



**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 7)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com  Lynda Bui File -

Docusign Envelope ID: CEEE8015-A486-4D2C-8571-38CAA62DFEC

Property Address: *12892 Claremore St., Victorville, CA  92392* _____ Date: *April 13, 2026*

14. **SIGN:** Unless checked in **paragraph 2J**, Seller authorizes Broker to install a FOR SALE/SOLD sign on the Property.

15. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

16. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker arising out of this Agreement, Seller and Broker are each responsible for paying their own attorney's fees and costs except as provided in **paragraph 19A**.

17. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, Broker or Manager has the right to cancel this Agreement, in writing, within **5 days** After its execution.

18. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

19. **DISPUTE RESOLUTION:**

   A. **MEDIATION:** (1) Seller and Broker agree to mediate any dispute or claim arising between them under this Agreement, before resorting to arbitration or court action. (2) Mediation fees, if any, shall be divided equally among the parties involved. (3) If, for any dispute or claim to which this paragraph applies, any party (the non-mediating party) **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then if the non-mediating party is the losing party in any such action, the prevailing party in such action shall be entitled to recover attorney fees from the non-mediating party, notwithstanding the terms in **paragraph 16**. (4) **Exclusions from this mediation agreement are specified in paragraph 19B.**

   B. **ADDITIONAL MEDIATION TERMS: The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.**

   C. **ARBITRATION ADVISORY: If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).**

20. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

21. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: **(i)** Seller is the owner of the Property; **(ii)** no other persons or entities have title to the Property; and **(iii)** Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are specified in **paragraph 2G**.

22. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer, identified in the signature block below, appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall deliver to Broker, within **3 days** after execution of this Agreement, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

# REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

# PROCEED TO NEXT PAGE

 

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 6 OF 7)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com      Lynda Bui File -

Docusign Envelope ID: CEEE8015-A486-4D2C-8571-38DAAA0259EC

By signing below, Seller acknowledges that they have received a copy of this Residential Listing Agreement, and they have read, understand, and agree to its terms.

**X** ENTITY SELLERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)

(1) **Non-Individual (entity) Sellers:** One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

(2) **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): Lynda T. Bui, ATF for the Bankruptcy Estate of In re Alma Ramirez, Case No. 6:25-bk19250-RB                                                                              .

(3) **Contractual Identity of Seller:** For purposes of this Agreement, when the name described below is used, it shall be deemed to be the full entity name.
(A) If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);
(B) If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).

(4) **Legally Authorized Signer:**
(A) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 22** for additional terms.
(B) The name(s) of the Legally Authorized Signer(s) is/are: _____ *Lynda T. Bui* _____, _____.

**SELLER SIGNATURE(S):**

(Signature) By, _____ Date: 4/17/26

Printed name of SELLER: Lynda T. Bui, ATF for the Bankruptcy Estate of In re Alma Ramirez

**X** Printed Name of Legally Authorized Signer: _____ *Lynda T. Bui* _____ Title, if applicable, *Chapter 7 Trustee*

Address _____ City _____ State _____ Zip _____

Email _____ Phone # _____

(Signature) By, _____ Date: _____

Printed name of SELLER: _____

☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

Address _____ City _____ State _____ Zip _____

Email _____ Phone # _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

**BROKER SIGNATURE(S):**

Real Estate Broker (Firm) *Lawyers Realty Group* _____ DRE Lic # *01870511* _____

Address *7700 Irvine Center Dr.* _____ City *Irvine* _____ State *CA* Zip *92618*

By (Broker/Agent) _____ *John Holmes* Date _4/14/2026_

Tel. *(949)535-2945* _____ E-mail *agent@lawyersrealtygroup.com* ____ DRE Lic # *00957800*

By (Broker/Agent) _____ Date _____

Tel. _____ E-mail _____ DRE Lic # _____

☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**RLA REVISED 12/25 (PAGE 7 OF 7)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 7 OF 7)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com     Lynda Bui File -

Docusign Envelope ID: CEEE8015-A486-4D2C-8571-38RA1A0259EC



# COMPENSATION SCHEDULE

## NOTICE:
The amount or rate of real estate commissions is not fixed by law.
They are set by each Broker individually and
may be negotiable between Seller and Broker.

Seller agrees to pay Broker six percent (6%) of the listing price in accordance with the terms of Paragraph 4 of the Residential Listing Agreement. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers. Broker is authorized to cooperate with and compensate other brokers by offering said brokers up to two percent (2%) of the purchase price to be paid out of Broker's compensation specified above.

Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.

|  |  |  |  |
|---|---|---|---|
| _____ | | DocuSigned by: | 4/14/2026 |
| Seller | Date | Agent   John Holmes | Date |
| Lynda T. Bui, ATF for the Bankruptcy Estate | | 46DA400F31C74BF | |
| of In re Alma Ramirez | | | |

_____

Seller                          Date

Docusign Envelope ID: CEEE8015-A486-4D2C-8571-38RA1A0219FC

## ADDENDUM TO LISTING AGREEMENT

Lynda T. Bui, Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate ("**Estate**") of *In re Alma Ramirez* ("**Debtor**"), currently pending in the United States Bankruptcy Court for the Central District of California, Riverside Division Case No. **6:25-bk-19250-RB**, agrees to grant *Saris Realty, Inc. dba Lawyers Realty Group* ("**Broker**") the exclusive rights to negotiate a sale of real property of the Estate located at **12892 Claremore St., Victorville, CA 92392 ("Property")**, upon the terms and conditions of the **Residential Listing Agreement (Exclusive Authorization and Right to Sell) ("Listing Agreement")** entered into with respect to the Property concurrently herewith, as amended by the following terms and conditions of this Addendum:

1.    Addendum. This Addendum amends the Listing Agreement. Notwithstanding any contrary terms and conditions in the Listing Agreement, this Addendum shall control.

2.    No Liability. The Trustee is listing the Property for sale with the Broker in her capacity as the Chapter 7 Trustee of the Debtors' Estate, and not in her personal capacity, and no liability or obligations shall accrue to her personally as a result of such listing. There shall be no claim by Broker for damages of any kind against the Trustee or against the law firm of which she is associated, Shulman Bastian Friedman & Bui LLP. Any claim for damages by Broker as it relates to the listing or sale herein shall only be against the Debtors' Estate.

3.    Trustee's Right to Sell. The Trustee shall have the right to sell the Property to anyone who, prior to the date of entering into the Listing Agreement or this Addendum, has expressed an interest in purchasing the Property and Broker shall not be entitled to a commission on such a sale.

4.    Termination. The Trustee may terminate the Listing Agreement at her option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the Estate or to the Trustee, either personally or in her capacity as Trustee, as a result of any such termination.

5.    Abandonment. The Trustee may terminate the Listing Agreement at her option and upon written notice to the Broker at any time, and lo liability or obligations shall accrue to the estate or to the Trustee, either personally or in her capacity as Trustee, as a result of any such termination.

6.    Conditions of Sale. The Broker agrees and understands that any sale of the Property shall be subject to the following terms and conditions:

a.    The Trustee is selling the Property in her capacity as the Chapter 7 Trustee of the Debtors' Estate, and not in her personal capacity, and no liability or obligations shall accrue to her personally as a result of any sale.

b.    If for any reason, or no reason whatsoever, the Trustee is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

c.    The Trustee is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever, including without limitation representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with California city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding the subdividability of the Property.

d.    The sale of the Property is subject to Bankruptcy Court approval after notice to the Debtor, all creditors of the Estate, the United States Trustee, and other parties in

Addendum to Listing Agreement

Docusign Envelope ID: CEEE8015-A486-4D2C-8571-38A860029FCE

interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules.

e.   The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property. The Trustee does not agree to acquire or transfer any insurance policies to the purchaser.

f.   The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow.

g.   All escrow fees shall be shared and paid on a 50/50 basis by the Trustee and the purchaser.

h.   The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law. The Trustee is not required to deliver to the purchaser a written statement of compliance with any applicable state and local law.

i.   The purchaser shall, at purchaser's sole expense, obtain and all pest control inspection repairs that purchaser deems appropriate.

j.   If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense.

k.   Any sale is subject to the following conditions being satisfied before the close of escrow:

(1)   the Trustee must prevail with respect to any objections to the proposed sale; and

(2)   the Trustee reserves the right to reject any and all offers which in her judgment are insufficient.

l.   The Property is being sold subject to:

(1)   All general and special taxes that are presently due, or may become due, regarding the Property, other than property taxes, which shall be prorated as of the close of escrow;

(2)   The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the California Revenue and Taxation Code and applicable statutes of the State of California; and

(3)   Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property.  Title, however, is to be transferred free of secured claims of record.

7.   Payment of Commission. Pursuant to the Listing Agreement and subject to further application and Court order, the Broker will receive a real estate agent's commission in an amount up to six percent (6%) of the purchase price, payable at four percent (4%) to the Broker and reserving a possible two percent (2%) for the buyer's broker. The Trustee has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers. The commissions to be paid to the Broker shall only be paid from the proceeds of the sale of the Property. If a sale is not consummated for any or no reason whatsoever, the Broker shall not be entitled to commissions. The parties acknowledge that the Listing Agreement, this Addendum and any agreement relating to the Property is not binding (including the entering into of a purchase agreement) until Bankruptcy Court approval. The parties acknowledge that the Bankruptcy

*If there is no cooperating cooker broker the 2% commission shall returned be to the estate.*

2

Addendum to Listing Agreement

Docusign Envelope ID: CEEE8015-A486-4D2C-8571-38RA4A0299FC

Court may after approval of this agreement later reduce commissions agreed to. A commission is not earned until Bankruptcy Court approval of a purchase agreement is obtained and escrow is closed.

8.      Entire Agreement. This Addendum and the Listing Agreement, to the extent that such Listing Agreement is not contrary to the terms and conditions herein, constitute the entire contract between the parties. All prior agreements between the parties are incorporated into this contract. Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. The parties further intend that this agreement constitutes the complete, final and exclusive statement of its terms and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this Addendum and the Listing Agreement.

9.      Bankruptcy Court Jurisdiction. The Bankruptcy Court shall have exclusive jurisdiction to resolve any and all disputes relating to this Addendum and the Listing Agreement.

Dated: April 17, 2026

Lynda T. Bui, Chapter 7 Trustee

Dated: April 13th, 2026

DocuSigned by:

John Holmes

SARIS REALTY, INC. DBA LAWYERS REALTY GROUP

* * * *

3

Docusign Envelope ID: CEEE8015-A486-4D2C-8571-382A1A92D9EC

**CALIFORNIA ASSOCIATION OF REALTORS®**

# SHORT SALE LISTING ADDENDUM
### (C.A.R. Form SSLA, 6/25)

This Is an addendum to the Listing Agreement, OR ☐ Other _____
dated __04/13/2026__ , on the property known as _____ _12892 Claremore St., Victorville, CA  92392_ _____ ("Agreement")
between _____ Lynda T. Bui, ATF for the Bankruptcy Estate of In re Alma Ramirez _____ ("Seller")
and _____ _Lawyers Realty Group_ _____ ("Broker").

1. **WHAT IS A SHORT SALE:** A short sale is the name used to describe a real estate transaction where the seller's lender(s) agree to allow the property owner to sell the property for less than the amount of the loan(s) secured by the property. The consent of a seller's lender(s) is necessary because without it there would not be enough money from the sale to pay off the lender(s) in full and to pay other costs of the sale. As a result, the lender's lien(s) would remain on title, and a seller would be unable to transfer title to a buyer free of monetary liens. (Properties that are worth less than the amount owed to the secured lender(s) are often referred to as being "underwater" or distressed properties).

2. **ALTERNATIVES TO A SHORT SALE:** Owners of distressed or underwater properties are faced with difficult choices that could have financial and emotional consequences. Any of the following or other alternatives potentially have negative tax or credit consequences, or both, for the owner:
   A. **A loan modification** is an arrangement between a borrower and a lender. It can involve a reduction in the interest rate on the loan, a deferment in payments on the loan, an extension of time to pay back the loan, a reduction in principal of the loan, a combination of these possibilities, or other changes to the repayment plan. A loan modification requires the consent of both lender and borrower.
   B. **A foreclosure** is a legal process through which the lender acquires title to the property from a borrower who has stopped making payments on a loan. The lender can foreclose whether or not the borrower consents.
   C. **A deed in lieu of foreclosure** occurs when the borrower offers to transfer the property to the lender, in lieu of the lender having to go through the foreclosure process, and the lender agrees to accept title to the property from the borrower and forgives the debt. A deed in lieu of foreclosure requires the consent of both lender and borrower.
   D. **Bankruptcy** is a legal action typically filed by a borrower to have debt(s) discharged. An automatic stay occurs as soon as a borrower files bankruptcy, staying all actions against the borrower. While a petition for bankruptcy can have the effect of delaying a foreclosure, it does not necessarily prevent a foreclosure from eventually occurring. No lender consent is required for a borrower to file bankruptcy.

3. **LENDER AGREEMENT TO SHORT SALE:** In order for a short sale to be completed, the lender(s), at a minimum, must agree to release the property from the lender(s) lien(s) to allow the sale. The lender(s) may or may not agree to reduce the amount owed to satisfy the debt. If not, the lender(s) may continue to pursue the borrower for payment of the balance of the debt. Prior to granting approval of the sale, the lender(s) may require the borrower to disclose all of the borrower's assets. They may require that the borrower liquidate other assets. They may require that the borrower sign an agreement to repay some or all of the debt at some later time. They may require that the borrower secure the unpaid debt with other assets owned by the borrower. Additionally, they will generally require that the transaction be arm's length, and that all terms of any benefit conferred on the seller be fully disclosed and that a seller cannot stay in the property following the sale. Finally, many first lien holders will limit the amount they will allow to be paid to a second lienholder, further complicating negotiations for the short sale. The lender will usually submit a "term sheet" to the borrower indicating the terms to which lender(s) will agree. If a seller and a buyer do not modify their contract to comply with the lender(s) terms, the lender(s) may not permit the short sale to proceed. Sellers are strongly advised to seek legal and tax advice regarding review of the term sheet. Brokers cannot and will not give legal or tax advice on the lender's term sheet or its effect on the Buyer and Seller's agreement or on the consequences to sellers and buyers should they proceed to close. There is no assurance that once the lender(s) have begun short sale negotiations, they will discontinue the foreclosure process.

4. **SELLER'S CONTINUING LIABILITY ON THE DEBT:** Many borrowers who attempt a short sale are concerned about whether the borrower is released from any further liability to the lender(s) or whether the lender can pursue the borrower for any unpaid balance of the debt. Some refer to continuing liability as a deficiency judgement. Generally speaking, a deficiency judgement is the right of a lender to pursue the borrower for the difference between the amount the lender receives and the amount the borrower owes on the debt. Deficiency judgements in California are prohibited in certain circumstances.
   A. **Short Sale:**
      1. Beginning July 15, 2011, Code of Civil Procedure 580e provides that any lender who approves a short sale in writing is not permitted to seek or collect a deficiency against the borrower if the loan is secured by a Trust Deed on residential property containing 1-4 units. This law may not be waived. The July 15, 2011 law does not apply to: **(i)** lienholders on other types of property; or **(ii)** a borrower who has committed fraud or waste: or **(iii)** borrowers who are corporations, limited liability companies, or limited partnerships. Prior to this law coming into effect, from January 1, 2011 the restriction on lenders seeking deficiencies for approved short sales only applied to lenders holding a first trust deed on residential 1-4 units.
      2. For properties or borrowers to which CCP 580e does not apply, some lenders in negotiating a short sale will want the owner to sign a note for the balance of the unpaid principal. Other lenders will release the lien only, but not forgive the underlying debt. Some lenders will "reserve their rights." Thus, in these situations whether or not a lender retains the right to pursue a deficiency following a short sale becomes a negotiable term for each sale.
      3. Seller is encouraged to **(i)** obtain a written agreement from lender(s) or other applicable lien holders addressing whether and to what extent Seller will be released from any monetary or other claim, obligation, or liability upon approval of the short sale, and **(ii)** have that written agreement reviewed by an attorney, CPA or other appropriate professional of seller's choosing.
   B. **Foreclosure:**
      1. **Purchase Money Loans:** Loans given by lenders to purchase 1-4 unit properties, one of which will be occupied by the borrower, and seller-financed purchases are subject to "purchase money" anti-deficiency protection rules. Generally, this means that the lender cannot pursue the borrower for any deficiency after the property is **foreclosed** upon by the seller or lender, whether the seller or lender uses a non-judicial trustee sale or a judicial foreclosure. Refinancing a purchase money loan causes it to lose any purchase money protection it might have.
      2. **Trustee Sales:** If a lender **forecloses** by non-judicial trustee sale instead of by judicial foreclosure, that lender is barred from seeking any deficiency from the borrower after the trustee sale, even if the loan was not purchase money.

© 2025, California Association of REALTORS®, Inc.
**SSLA 6/25 (PAGE 1 OF 3)**

Seller's Initials  / _____



**SHORT SALE LISTING ADDENDUM (SSLA PAGE 1 OF 3)**

Docusign Envelope ID: CEEE8015-A486-4D2C-8571-38DA1A0259EC

Property Address: *12892 Claremore St., Victorville, CA  92392*  Date: *04/13/2026*

3. **Refinanced Liens:** The anti-deficiency protections become much less clear for loans that are refinanced. Generally, loans that are refinanced lose their "purchase money" protection. Lenders extending refinances may be able to pursue a deficiency judgment against the borrower directly following a judicial foreclosure. However, beginning January 1, 2013 Borrowers who refinance a purchase money loan on owner-occupied residential property with 1-4 units, and do not take any cash out from the refinance receive the same anti-deficiency protection as if the refinance loan was a purchase money loan.

4. **Junior Liens:** The anti-deficiency protections for Junior Lien holders are also somewhat unclear. Junior debt used to purchase the residence (such as 90/10 first and second) would have "purchase money" protection generally. However, junior liens that are refinanced or junior liens that are used to take out equity do not have "purchase money" protection. Such "non purchase money" junior lienholders may be able to pursue a deficiency judgement against the borrower directly after a Trustee's sale by a senior lienholder or after a judicial foreclosure by the junior lienholder. Although the law is not entirely clear, home equity loans (HELOCs) may fall into this category.

5. **Other Liens:** Many other types of liens may be recorded on title including, without limitation, homeowners association liens, judgement liens, tax liens, and child support liens. Generally foreclosures by any lienholders senior to such liens do not protect the owner of the property from later legal action by the lienholder to collect on the obligation.

5. **CREDIT AND TAX CONSEQUENCES:**

A. **CREDIT:** All of the owner's options discussed above will most likely have a negative impact on the owner's credit and on the owner's ability to finance or purchase property for some time. The credit impact and length of time the owner would have difficulty in obtaining a loan to purchase property again, or to be approved for any other credit transactions such as obtaining a credit card, leasing an apartment, or even to gain employment, varies. Lenders may view short sales and alternatives differently depending on their own underwriting guidelines and those established by governmental or quasi-governmental bodies.  To find out more information about the impact to your credit score, go to www.myfico.com.

B. **TAX:** With some exceptions, a reduction or discharge of a debt obligation by a lender results in income to the borrower.  The income might not be taxable if the debt was being used to acquire, construct or substantially improve a borrower's principal residence. Another exception exists if the forgiveness of debt results from a situation where the lender is barred by law from collecting the debt, as in a foreclosure of purchase money debt.  Insolvency and bankruptcy rules can also shield a borrower from forgiveness of debt income.  Generally, when any debt is forgiven by a lender, they are required to provide the borrower a 1099 and it will be up to the borrower to make the proper claim on their tax return to avoid debt forgiveness income.  Some of these rules are temporary, and state laws and federal laws differ.  Broker has advised Seller that if Lender agrees to accept less than full payment, the difference may result in taxable income to Seller even though Seller does not receive any cash proceeds from the sale. Seller may also be taxed on the gain in value of the Property from the date of Seller's purchase to the date of sale, regardless of the amount of any existing loans/liens.

C. **PROFESSIONAL ADVICE:** Seller is advised to discuss with a qualified California real estate attorney, CPA or other professional of Seller's choosing before **(i)** accepting any offer to present to lender or **(ii)** agreeing to any changes requested by lender to an already accepted contract.

6. **POTENTIAL IMPROPRIETIES:** It is an unfortunate reality that many persons, including real estate licensees, mortgage lenders, and attorneys, among others, have taken advantage of owners of underwater or distressed properties.  Some of the schemes present themselves as "rescues" of the homeowner, promising to let them stay in the property, to protect their credit, or to provide payments to them after closing, and usually outside of the escrow. Both the California Department of Real Estate (DRE) (http://www.dre.ca.gov) and the California Attorney General (http://www.ag.ca.gov) have issued written warnings of potential red flags in short sales and other rescue schemes. Some of these red flags are:

A. **No license:** The DRE believes that a real estate license is generally required to negotiate any short sale;

B. **MARS:** Short sale negotiators who do not represent a seller or buyer in a short sale are generally required to comply with the Mortgage Assistance Relief Services rules and provide required disclosures and notices to a seller.

C. **Up-front fees:** No real estate licensee can collect any up-front or advance fee without having first obtained a "no objection" letter from the DRE and no up-front fees may be taken for arranging a loan modification;

D. **Surcharges:** Charges by third parties that are not disclosed to the short sale lender and usually paid outside of escrow;

E. **3rd Party negotiations:** The licensing and fee requirements above apply whether the negotiation occurs through a Broker, representing a seller or a buyer in the transaction, or a 3rd party short sale negotiator. As with other real estate activity, short sale negotiator fees are negotiable and not set by law.  The existence, fee and licensed status of any 3rd party short sale negotiator shall be disclosed to the lender and must be approved by the lender as part of the overall compensation to be paid in the short sale transaction.

F. **Straw buyers and house flipping:** Buyers misrepresent the value of the property to the short sale lender and flip the property to another buyer already in place;

G. **Other:** Other potential red flags include: guarantees to stop the foreclosure; instructions not to contact the lender; transfer of title prior to close (often to a trust) as a condition of negotiating with the lender; the buyer is an LLC; the buyer wants a power of attorney from the seller; and the buyer hires the third party negotiator or wants to negotiate directly with the lender.

While most of the activities on the above list on their face are not fraudulent, they serve as warning signs that the owner and the real estate agents involved should proceed with caution.

H. **Warning:** Real Estate Licensees must exercise care to ensure that they are not acting as Foreclosure Consultants or offering Mortgage Assistance Relief without providing proper notices and disclosures to short sale sellers

7. **NATIONAL MORTGAGE SETTLEMENT (SETTLEMENT) AND CALIFORNIA HOMEOWNER BILL OF RIGHTS:** In early 2012 California joined a national settlement agreement between five of the nation's largest lenders (Bank of America, JPMorgan Chase, Wells Fargo, Citigroup and Ally Financial) and most states ("the Settlement"). The Settlement obligates the lenders to, among other things, write down or refinance some loans, extinguish certain unpaid balances and provide transition assistance to some homeowners.  Loans owned by Fannie Mae or Freddie Mac are not covered by the Settlement. In Fall of 2012, California enacted a series of laws, effective January 1, 2013, commonly and collectively referred to as the California Homeowner Bill of Rights ("Homeowners BOR").  These laws prohibit foreclosures while an approved short sale is pending or while a loan modification is in process or on appeal, as well as other requirements. Whether a borrower qualifies for any of the advantages of the Settlement and the Homeowner BOR requires an analysis of the borrower's loan and its applicability to either of those items.  Such an analysis is beyond the scope of Broker's expertise. If a buyer or seller has questions about whether the borrower's loan is covered by either the Settlement or the Homeowner BOR, or how either of those items can affect a short sale transaction, that party should discuss the matter with a lawyer or accountant of their own choosing.

**SSLA 6/25 (PAGE 2 OF 3)**  Seller's Initials ___ / ___

**SHORT SALE LISTING ADDENDUM (SSLA PAGE 2 OF 3)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com  Lynda Bui File -

Docusign Envelope ID: CEEE8015-A486-4D2C-8571-382A1A9269EC

Property Address: *12892 Claremore St., Victorville, CA  92392* _____ Date: *04/13/2026*

8.   **BROKER ROLE:** A real estate broker cannot give legal or tax advice in connection with any of the options available to the borrower nor can the broker suggest what is the best course of action for the owner. Unfortunately, the owner is faced with extremely difficult choices having a lasting impact on the owner. Owners are strongly cautioned that they must seek legal and tax advice in what is not only a choice impacting taxes and credit, but also personal issues affecting the owner and often the owner's family. The broker's role is to assist the owner with the actual sale of the property in a short sale transaction, not to provide legal or tax advice or to guarantee the best possible outcome for the parties, or to assure a buyer that any particular transaction will be completed. Brokers do not, and cannot, assure that either a seller or a buyer will perform on their agreement or that the lender(s) will agree to any of the terms presented. Brokers are not a party to the contract between Buyer and Seller.

9.   **BROKER AUTHORITY:** Seller authorizes Broker to: (1) market the Property for sale, (2) contact lenders concerning lender's approval of a short sale (C.A.R. Form ARC) and Seller agrees to give Broker any necessary information to negotiate with lenders, and (3) advertise in the MLS and other advertising medium that the property transfer, sales price and payment of commissions are subject to lender's approval. If lenders will not cooperate, Broker may cancel the listing agreement.

**By signing below, Seller acknowledges that they have received a copy of this Short Sale Listing Addendum, and they have read, understand, and agree to its terms.**

Seller _____ Date 4/17/26

Seller   Lynda T. Bui, ATF for the Bankruptcy Estate of In re Alma Ramirez _____ Date _____

Real Estate Broker (Seller's Brokerage Firm) *Lawyers Realty Group* _____ DRE Lic # *01870511*

By (Agent) _____ DRE Lic # *00957800* _____ Date 4/14/2026

*John Holmes*

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**SSLA 6/25 (PAGE 3 OF 3)**



**SHORT SALE LISTING ADDENDUM (SSLA PAGE 3 OF 3)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com        Lynda Bui File -

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT OF SARIS REALTY INC. DBA LAWYERS REALTY GROUP AS REAL ESTATE BROKER; DECLARATION OF JOHN HOLMES IN SUPPORT (with Notice of Opportunity to Request a Hearing on Motion)** be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April** 21**, 2026,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Lynda T. Bui (TR)**    trustee.bui@shulmanbastian.com, C115@ecfcbis.com
- **Andy Nguyen**    ecf.notice@anguyenlawgroup.com
- **United States Trustee (RS)**    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **April 21, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **April 21, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Proposed Broker**
Lawyers Realty Group
Attn:  John Holmes
Email:  agent@lawyersrealtygroup.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 21, 2026 | Lori Gauthier | */s/ Lori Gauthier* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June  2016*                                                    **F 9013-3.1.PROOF.SERVICE**

## U.S. MAIL SERVICE LIST

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Section MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Bank of America
450 American St.
Simi Valley, CA 93065-6285

Credit Collection Services
Attn: Bankruptcy
725 Canton St
Norwood, MA 02062-2679

Curacao
Attn: Bankruptcy
1605 West Olympic Boulevard,
Suite 600  Los Angeles, CA 90015-
3860

Financial Partners Credit Union
Attn: Bankruptcy
Po Box 7005
Downey, CA 90241-7005

Foell & Elder
3818 E. La Palma Ave.
Anaheim, CA 92807-1713

Galaxy International Purchasing
c/o Rausch Sturm LLP
250 N. Sunnyslope Rd., Suite 300
Brookfield, WI 53005-4824

LVNV Funding LLC/Resurgent
Capital Servi Resurgent
Correspondence, Attn: Bankrupt Po
Box 1269
Greenville, SC 29602-1269

LAUNCH SERVICING  LLC
P O BOX 91910
SIOUX FALLS SD 57109-1910

LENDINGPOINT
1201 ROBERTS BLVD
SUITE 200
KENNESAW GA 30144-3612

Midland Credit Mgmt
Attn: Bankruptcy
Po Box 939069
San Diego, CA 92193-9069

PennyMac Loan Services, LLC
PennyMac Loan Services, LLC,
Attn: Bankr    Po Box 514387
Los Angeles, CA 90051-4387

PORTFOLIO RECOVERY
ASSOCIATES LLC PO BOX 41067
NORFOLK VA 23541-1067

Synchrony/PayPal Credit
Attn: Bankruptcy
Po Box 965064
Orlando, FL 32896-5064

United States Trustee (RS)
3801 University Avenue, Suite 720
Riverside, CA 92501-3255

Volkswagen Credit, Inc
Attn: Bankruptcy
1401 Franklin Blvd.
Libertyville, IL 60048-4460

Andy Nguyen
Nguyen Law Group
9411 Haven Ave., Suite 201
Rancho Cucamonga, CA 91730-
5885

Alma Ramirez
12892 Claremore St.
Victorville, CA 92392-0467

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June  2016*                                                                                                  **F 9013-3.1.PROOF.SERVICE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

100 Spectrum Center Drive, Suite 600, Irvine, CA 92618


A true and correct copy of the foregoing document entitled: **DECLARATION THAT NO PARTY REQUESTED A HEARING ON MOTION [LBR 9013-1(o)(3)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:


**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 05/12/2026   , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Lynda T. Bui (TR)    trustee.bui@shulmanbastian.com,
C115@ecfcbis.com,avernon@shulmanbastian.com,RPodorovsky@shulmanbastian.com
Andy Nguyen    ecf.notice@anguyenlawgroup.com
United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page


**2**.  **SERVED BY UNITED STATES MAIL**:
On (*date*) _____ , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page


**3**.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


| 05/12/2026 | Lori Gauthier | /s/ Lori Gauthier |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                    Page 3                    **F 9013-1.2.NO.REQUEST.HEARING.DEC**